IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JAMES W. CLARK, Petitioner, | Criminal No. 01-38 |
| UNITED STATES OF AMERICA, Respondent. | The Hon. Ernest C. Torres |

PETITION FOR MODIFICATION OF TERM OF IMPRISONMENT PURSUANT TO TITLE 18 U.S.C. § 3582(c)

**COMES NOW, James W. Clark** (hereinafter petitioner), filing as a pro se litigant and moves this Honorable Court to amongst other things to grant the petitioner the liberal construction deserving of a pro se litigant.

JURISDICTION

Title 18 U.S.C. § 3582(c)(2) states in part "The court may not modify a term of imprisonment, once it has been imposed except that - [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable policy statements issued by the Sentencing Commission." Id.

BACKGROUND

On June 25, 2002, petitioner was sentenced to a term of imprisonment of 188 months base upon his convictions, on a plea of guilty, to four counts of possession with intent to distribute 5 grams or more of cocaine base (crack) on four separate occasions (Count 1 November 9, 2000, 26.9 grams of crack; Count 2 November 14, 2000, 26.8 grams of crack; Count 3 December 19, 2000, 27 grams of crack; and Count 4 March 1, 2001, 26.8 grams of crack). The sentence was imposed under the mandatory, pre-Booker (United States v. Booker, 543 U.S. 220 (2005)) sentencing guidelines and prior to the recent amendment to the crack cocaine guideline. (Amendment 706).

Petitioner admitted to being responsible for a total of 107.5 grams of cocaine base crack. Under the 2001 Guidelines, each count of petitioner's conviction had a Base Offense Level (BOL) of 28. Petitioner's Criminal History Category (CHC) was determined to be VI. However, because of two prior qualifying convictions petitioner was deemed to be a career offender within the meaning of U.S.S.G. § 4B1.1. Petitioner with the addition of the career offender enhancement petitioner's BOL was raised to 34 and based on the career offender table the sentencing range was 25 years or more (id. at 4B1.1(B)). Petitioner was awarded a 3 point reduction in his BOL of 34 for acceptance of responsiblity thus giving him a BOL of 31 with a Guideline Sentencing Range (GSR) 188-235 months. Petitioner was sentenced to the bottom of the then mandatory GSR.

Subsequent to petitioner's sentencing, on November 1, 2007,

the Sentencing Commission promulgated Amendment 706 which in general reduces the BOL for most quantities of crack cocaine by two. The amendment was adopted in response to several studies which raise grave doubts about the fairness and rationale of the 100-to-1 crack/powder ratio that had been incorporated into the Sentencing Guidelines. See generally United States Sentencing Commission, Report to Congress: Cocaine and Federal Sentencing Policy (May 2007)(hereinafter "2007 Sentencing Commission Report"); United States Sentencing Commission, Report to Congress: Cocaine and Federal Sentencing Policy (May 2000); United States Sentencing Commission, Special Report to Congress: Cocaine and Federal Sentencing Policy (April 1997); United States Sentencing Commission, Special Report to Congress: Cocaine and Federal Sentencing Policy (February 1995). See also Kimbrough v. United States 128 S. Ct. 558, 568-69(2007)(discussing history of crack cocaine guideline and various Sentencing Commission reports). The amendment, however, as the Sentencing Commission itself recognizes, is only a "partial response" to some of the "urgent and compelling" problems associated with the 100-to-1 drug quantity ratio 2007 Sentencing Commission Report, supra, at 10. (Quoting the Commission, the Supreme Court has noted that the "modest amendment [still] yields sentences for crack offenses between two and five times longer than sentences for equal amounts of powder." Kimbrough, supra at 128 S. Ct. 569.

Subsequent to the effective date of this amendment to §2D1.1, the Sentencing Commission considered whether to make the amendment retroactive under the authority created by 18 U.S.C. §

3582(c)(2). It took that action on December 11, 2007, by including this amendment in the list of retroactive amendments in § 1B.1.10 See 73 Fed. Reg. 217-01 (2008). Based on this retroactivity, the statutory authority underlying it and at a minimum the Supreme Court's intervening decisions in Booker, Kimbrough, Rita v. United States, 127 S. Ct. 2456 (2007), and Gall v. United States, 128 S. Ct. 586 (2007), petitioner bring this motion to reduce his sentence.

DISCUSSION

A United States District Court Judge granted a career offender defendant at sentencing a 91 month reduction, the government filed a timely notice of appeal to the First Circuit. The First Circuit states that "We withheld decision in anticipation that the Supreme Court shortly would revisit the sentencing guidelines and speak authoritatively to the tri-cornered relationship among them, the district court's discretion (informed by the section 3553(a) factors), and the sentence actually imposed. That expectation was rewarded in Gall, a decision that warrants some elaboration."

After pleading guilty to a drug-trafficking charge, Gall faced a GSR of 30-37 months. 128 S. Ct. at 592-93. The district court, taking account of several section 3553(a) factors-including age, voluntary withdrawal from the charged conspiracy, familial support, and apparent pre-indictment rehabilitation-eschewed hard time and imposed a probationary sentence. Id. at 593. The court of appeals vacated the judgment, terming the non-incarcerative sentence "unreasonable" and stressing that the

sentence comprised a "100% downward variance" from the GSR. Id. at 594 (quoting United States v. Gall, 446 F.3d 884,889 (8th Cir. 2006)).

The Supreme Court reinstated the sentence. See id at 598-602. In so doing, the Justices emphasized the broad sweep of a sentencing court's discretion in the wake of the decision in United States v. Booker, 543 U.S. 220, 260-62, 125 S. Ct. 738, 160 L. Ed.2d 621 (2005), which rendered the federal sentencing guidelines advisory. See Gall, 128 S. Ct. 594-98.

The Gall court was careful not to throw out the baby with the bath water. The Court acknowledged that the guidelines deserve some weight in the Sentencing calculus, as they are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." Id. at 594. It made clear, though, that courts of appeals must grant district courts wide latitude in making individualized sentencing determinations, thus guarding against the institutionalization of an impermissible presumption that out-side -the-range sentences are unreasonable. Id. at 595.

To help navigate the strait between guidance and discretion, the Gall Court laid out a sequence of steps for sentencing courts to follow. a sentencing determination should begin with the calculation of the particular defendant's GSR. As a final step in arriving at a defendant's GSR, the district court must assess the appropriateness vel non of any departures (departures are distinct from what are interchangeably called variances or deviations, which are superimposed upon the ultimate guidelines,

calculation. See United States v. Vampire Nation, 451 F.3d 189, 195 & n. 2 (3d Cir. 2006). See United States v. Dixon, 449 F.3d 194, 204 (1st. Cir. 2006).

Properly calibrated, the GSR should serve as the sentencing court's "starting point" or "initial benchmark." Gall 128 S. Ct. at 596. Nevertheless, the guidelines are only advisory, see Booker, 543 U.S. at 262, 125 S. Ct. 738, and the sentencing court may not mechanically assume that the GSR frames the boundaries of a reasonable sentence in every case. See Gall, 128 S. Ct. at 596-97.

The sentencing court's next steps should include hearing arguments from the parties as the proper sentence in the particular case, weighting the applicability of the sundry factors delineated in 18 U.S.C. § 3553(a), reaching an ultimate sentencing determination, and explaining that decision on the record. See Gall, 128 S. Ct. at 596-97. This progressive sequence was adumbrated in our post-Booker, pre-Gall jurisprudence. See e.g., Dixon, 449 F.3d at 203-05; United States v. Jimenez-Beltre, 440 F.3d 514, 518-19 (1st. Cir. 2006)(en banc).

This sequencing necessitates a case-by-case approach, the hallmark of which is flexibility. In the last analysis, a sentencing court should not consider itself constrained by the guidelines to the extent that there are sound, case-specific reasons for deviating from them. Nor should a sentencing court operate in the belief that substantial variance from the guidelines are always beyond the pale. Rather, the court should

"consider every convicted person as an individual and every case as a unigue study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to cause." Gall, 128 S. Ct. at 598.

Of course, the fact that a sentencing court possesses the raw power to deviate from the guidelines does not mean that it can (or should) do so casually. The court's reasons for deviation should typically be rooted either in the nature and circumstances of the offense or the characteristics of the offender; must add up to a plausible rationale; and must justify a variance of the magnitude in question. See, e.g., United States v. Scherrer, 444 F.3d 91, 93 (1st Cir. 2006)(en banc); Jimenez-Beltre, 440 F.3d at 519. Moreover, a certain "sliding scale" effect lurks in the penumbra of modern federal sentencing law; the guidelines are the starting point for the fashioning of an individualized sentencing, so a major deviation from them must "be supported by a more significant justification than a minor one." Gall, 128 S. Ct. at 597.

We hasten to add, however, that not-withstanding this need for a increased degree of justification commensurate with an increased degree of variance, there is no stringent mathematical formula that cabins the exercise of the sentencing court's discretion. See id. at 595. Indeed, after Gall the sentencing inquiry-once the court has duly calculated the GSR-ideally is broad, open-ended and significantly discretionary. United States v. Vega-Santiago, 519 F.3d 14, 20 (1st Cir. 2008)(en banc). At that point, sentencing becomes a judgment call, and a variant

sentence may be constructed "based on a complex of factors whose interplay and precise weight cannot even be precisely described." id. at 19. See United States v. Martin, 520 F.3d 89, 90-92 (1st Cir. 2008).

The Martin Court went on to say: ". . . the court deviated downward from the GSR by 91 months.

We readily acknowledged that this is a significant variance, but what remains-144 months-is by no measure a trivial restriction of the defendant's liberty. Indeed, the duration of the sentence is two years greater than the mandatory minimum sentence that congress has prescribed for the crime of conviction, see 21 U.S.C. § 841(b)(1)(B) and hardly qualifies as a powder-puff sentence.

In a last ditch effort to turn the tide, the government suggested that the 144-months sentence is unreasonable because it placed the defendant within the GSR that he would have obtained had he not been a career offender. In the government's view, this outcome effectively nullifies Congress's intent to punish recidivism more severely. See 28 U.S.C. § 994(h)(directing the Sentencing Commission, with respect to career offenders, to "assure that the guideline specify a sentence to a term of imprisonment at or near the maximum term authorized"); see United States v. Caraballo, 447 F.3d 26, 27-28 (1st Cir. 2006).

We believe that this suggestion is wide of the mark. The Supreme court's recent decision in Kimbrough, 128 S. Ct. at 574-75, open the door for a sentencing court to deviate from the

guidelines in an individual case even though that deviation seemingly contravenes a broad policy pronouncement of the Sentencing Commission." Martin, at 96.

On December 11, 2007, the Commission promulgated Policy Statement § 1B1.10, effective March 3, 2008, to recommend procedures to be followed in deciding § 3582 motions. One of the Commission's recommendations is that, in determining whether, and to what extent, a reduced term is appropriate, the court should look only to the guideline amendment, and "leave all other guideline application decisions (made at the original sentencing) unaffected." U.S.S.G. § 1B1.10(b)(1)(Policy Statement).

The fact that the 100-to-1 powder to crack ratio fails to meet the objective of sentencing because it rests on unsupported assumptions about the relative harmfulness of the drugs, punishes "retail" crack dealers more harshly than "wholesale" drug distributors, and promotes an unwarranted disparity based on race. Kimbrough, at 568 (citing U.S.S.C., Report to Congress: Cocaine and Federal Sentencing Policy 91-103 (May, 2002); see also United States v. Regalado, 518 F.3d 143, 150 (2d Cir. 2008). Moreover, the Sentencing Commission in recognizing that the amended guideline is only a "partial remedy" to the underlying problem, has conceded that crack guideline sentences are still greater than necessary to satisfy the purposes of sentencing. See U.S.S.G., App. C, Amend 706 (November 1, 2007); 2007 Sentencing Commission Report, available at http://www.ussc.gov/r congress/cocaine 2007. pdf. This is a clear admission that, even after application of the amended guideline, the sentencing ranges

suggested for crack offenders violate the parsimony provision of 18 U.S.C. § 3553(a), which mandates that a court impose a sentence that is "sufficient, but not greater than necessary", to achieve the goals of a criminal sanction (The Chairman of the Commission has stated publicly that "The Commission believes that there is no justification for the current statutory penalty scheme for powder and crack cocaine offense. Testimony of Hon. Ricado H. Hinojosa, before Senate Judiciary Subcommittee on February 12, 2008.). This being the case, petitioner request for resentencing should not be limited to whether his offense level should be reduced by two, but rather should include a determination of whether, after such a reduction, the recommended sentence is still "greater than necessary', to serve the statutory purposes of sentencing. Regalado, at 151 ("In deciding whether to modify the sentence, district courts must consider the factors set forth in 18 U.S.C. § 3553(a) anew and in light of Gall and Kimbrough, and applicable Sentencing Commission policy statments"); United States v. Hicks, 472 F.3d 1167, 1169 ("Booker applies to § 3582(c)(2) proceedings.). Also see Cirilo-Munoz v. United States, 404 F.3d 527, 533 (1st Cir. 2005)(listing court of appeals cases stating that the advisory guidelines regime is to be used for sentencing for non-Booker error remands).

While § 1B1.10(a)(3) may discourage broad resentencing,it may not preclude a court from re-examining its prior decision. The Court's sentencing determination in a § 3582(c) proceedings should be informed by Booker (making the guidelines advisory),

Kimbrough, 128 S. Ct. at564 "the cocainne Guidelines, like all other Guidelines, are advisory only."), Regalado, at 147 ("[W]hen a district court sentenced a defendant for a crack cocaine offense before Kimbrough, there was an unacceptable likelihood of error.") and other relevant intervening caselaw. Indeed, to the extent that the Commission's policy statement requires the Court to impose a sentence that the Commission, itself admits is greater than necessary, it must give way to the court's discretion (and obligation) to follow the statutory mandate of § 3553(a).

Section 3582(c)(2) cannot make the policy statement mandatory. Section 3582(c)(2) authorizes the Court to reduce a defendant's sentence based upon retroactive amendments to the sentencing guidelines "if such reduction is consistent with applicable policy statements issued by the Sentencing Commission." When this statue was enacted the guidelines were mandatory. It has not been amended since Booker rendered the guidelines advisory. It cannot, in light of Booker's Sixth Amendment underpinnings, be construed as making the Commission's policy statement mandatory. Booker makes it clear that the guidelines, in order to survive constitutional scrutiny, must be advisory in all contexts, including resentencings. If § 3582 is read as making § 1B1.10 mandatory, the pre-Booker constitutional infirmities would apply once again. Under the rule of constitutional avoidance, the statutory provision can only be read as making the Commission's policy statement advisory. See Jones v. United States, 529 U.S. 848, 857 (2000)(The doctrine of

constitutional avoidance provides that where statutory language could be interpreted either consistently or inconsistently with constitutional mandates it should be construed consistently).

Moreover, Congress has never delegated to the Sentencing Commission the statutory authority to limit the jurisdiction of a court to impose an appropriate sentence. Section 3582(c) does not, by its terms, limit a court's discretion to reduce a sentence only by the extent that the application guideline range has been lowered. Rather, it provides in broad terms that the Court "may reduce the term of imprisonment". If § 1B1.10 is construed as mandatory, it would result in the illegal delegation to the Sentencing Commission of the authority to limit a District Court's jurisdiction. This would clearly violate our constitutional framework. It must be kept in mind that the constitutionality of the Sentencing Reform Act, which established the Commission, was upheld **only** because the Supreme Court concluded that it did not contain such an unconstitutional delegation of Congress's legislative powers. Mistretta v. United States, 488 U.S. 361 (1989).

## CONCLUSION

Nothing in the Statutory language requires that the guidelines amendment actually have the effect of lowering a defendant's guideline range before the sentencing court can revisit the sentence. Rather, the statute requires that the defendant's sentence was "based on" a sentencing range that has subsequently been lowered. See, e.g., United States v. LaBonte, 70 F.3d 1396, 1412 (1st Cir. 1995)(rejecting government's

argument that § 3582(c)(2) resentencing is inappropriate where defendant's original sentence falls within the amended guideline range because "we cannot be confident that, faced with a different range of options, the district court's choice will remain the same")(overruled on other grounds 520 U.S. 751 (1997)). All crack sentences were "base on" the crack guideline's sentencing ranges because those ranges represented the starting point of every sentencing pre- and post-Booker, even if the defendant was ultimately sentenced under § 4B1.1. See Gall, 128 S. Ct. at 596 ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range . . . the Guidelines should be the starting point and the initial benchmark. They are not the only consideration, however . . . . [T]he judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.")(emphasis added).

At a minimum, the Court should reduce petitioner's offense level by two, recalculate his guideline range and impose a sentence of not more than 151 months. However, he urges the Court to look deeper and exercise its discretion under Booker and § 3553(a), to resentence him pursuant to truly advisory guidelines and remedy the harsh sentence that previously was mandated by the arbitrary crack and career offender guidelines. See United States v. Sanchez, ____ F.3d ____, 2008 WL 53517 ** 9-11 (2d Cir. Feb. 29, 2008)("The absence of any express statutory instruction to the court to sentence a career offender to a prison term at or near the statutory maximum was not an

oversight, . . . . Delving into the legislative history of Section 994(h), the court noted that lawmakers considered and rejected a proposal that would have mandated that sentencing judges themselves impose sentences on career offenders at or near the statutory maximum."); United States v. Marshall, slip op., 2008 WL 55989 ** 7-9 (7th Cir. Jan. 4, 2008)("We must reexamine our case law [holding] that courts are not authorized to find that the guidelines themselves, or the statutes on which they are based, are unreasonable . . . in light of the Supreme Court's recent decision in Kimbrough" . . . . Acknowledging that defendant who was sentenced as a career offender "may be eligible to petition for resentencing" under 3582(c)(2) in light of the retroactive crack amendment); United States v. Pruitt, 502 F.3d 1154, 1168 (10th Cir. 2007)(,cConnell, J., concurring)("This might appear to be an admission by the Commission that this [career offender] guideline, at least as applied to low-level drug sellers like [the defendant], violates the overarching command of 3553(a) that '[]he court . . . impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in 3553(a)(2)."); United States v. Williams, 435 F.3d 1350. 1355-56 (11th Cir. 2006)(affirming as reasonable a sentence well below the career offender guideline in a case involving crack cocaine where district court "correctly calculated the Guidelines range and gave specific, valid reasons for sentencing lower than the advisory range"); United States v. Malone, 2008 U.S. Dist. LEXIS 13648 (E.D. Mich. Feb. 22, 2008) imposing a below the guidelines sentence based on Commission's

reports finding career offender guideline unsound); United States v. MacKinnon, 401 F.3d 8, 9 (1st Cir. 2005)(reversing for resentencing after Booker where the defendant convicted of a crack offense was sentenced pre-Booker to guideline minimum of 262 months under the career offender guideline (up from what would have been a sentence of 188 months under the "regular" guideline range), where the sentencing judge described the career offender sentence as "unjust, excessive and obscene.").

Thee Commission has recognized that the recidivism rate for offenders whose career offender status is based on drug offenses "resembles the rates for offenders in lower criminal categories in which they would be placed under the normal criminal history scoring rules." United States Sentencing Commission, Fifteen Years of Guideline Sentencing, at 134 (Nov. 2004); id. at 133-34 (recognizing that the career offender guideline "make the criminal history category a less perfect measure of recidivism risk than it would be without the inclusion of offenders qualifying only because of prior drug offense,: does not serve a deterrent purpose, and has a disproportionate impact on African Americans).

Specifically, petitioner ask the Court to impose a sentence that is "sufficient, **but not greater than necessary**" to achieve the various goals of sentencing. "We need go no further. Under Booker and Gall, there is a heavy emphasis on sentencing court's informed discretion", United States v. Martin, 520 F.3d 87, 89 (1st Cir. 2008).

As a final note petitioner ask that this Honorable Court

also take into consideration during its deliberations that petitioner has participated in the limited educational opportunity offered here at F.C.I. Otisville, with the acquisition of the following certificate: (1) Doing Time With A Right Mind; (2) Parenting Skills Program Level II; (3) Kairos; (4) Legal Research and Procedure; and (5) Drug Education Program, (See Attachments).

**WHEREFORE** petitioner prays that this Honorable Court grant him the requested relief and any other relief it deems to be just.

I declare under the penalty of perjury that the foregone is true and correct based on the facts and laws cited herein.

Respectfully submitted,

James Clark

James W. Clark

CERTIFICATE OF SERVICE

I, James W. Clark, hereby certify that I have served a true and correct copy of the following:

Petition For Modification Of Term Of Imprisonment Pursuant To Title 18 U.S.C. § 3582(c)

Which is deemed filed at the time it was delivered to prison authorities for forwarding, Houston v. Lack, 101 L. Ed.2d 245 (1988), upon petitioner placing same in a sealed, postage prepaid envelope addressed to:

Clark of Court-3-Copies
Fed. Build. & Cthou.
1 Exchange Ter.,Rm. 119
Providence, RI 02903-1779

AUSA Kenneth P. Madden
Fleet Center
50 Kennedy Plaza 8th Fl.
Providence, R.I. 02903

and deposited same in the United States Postal Mail at the Federal Correctional Institution at Otisville, New York on this 10th day of June 2008.

Respectfully submitted,

James Clark

James W. Clark
Fed. Reg. No. 05072-070
F.C.I. Otisville
P.O. Box 1000
Otisville, NY 10963
Filing Status: Pro Se

# Federal Bureau of Prisons
# FCI Otisville
# Certificate of Completion

***JAMES CLARK***
05072-070

In recognition of his participation in the Drug Education Program here at FCI Otisville, he is presented with this certificate of completion of the program.

This certificate is hereby issued this 21st day of June, 2007

P. Griffin, PhD, Drug Abuse Program Coordinator

Eleni M. Dariotis, M.Ed., Drug Treatment Specialist

DTRM DTRM

# Certificate of Achievement

*Presented on this Twenty Third Day of March*
*in the year Two Thousand and Five*

*James Clark*

In Recognition of Your Completion
of the eight week course "Doing Time With A Right Mind"

| | | |
|---|---|---|
| Fredrick Menifee | March 23, 2005 | William Acton |
| *Fredrick Menifee, Warden* | *Date* | *William Acton Coordinator* |

# Certificate of Award

This certifies that

**James Clark**

*Has completed the required curriculum and assignments of the*

## Parenting Skills Program Level II

*Awarded by*

## Bethesda Family Services Foundation

"Healing Hearts and Changing Lives"

September 18, 2003

*James Dressler*
James Dressler, Prison Programs Supervisor

*Bob Meckly*
Bob Meckly, Parenting Instructor

# CERTIFICATE OF COMPLETION

KAIROS PRISON MINISTRY ®

THE KAIROS SHORTCOURSE IS A TOTAL IMMERSION THREE-AND-ONE-HALF-DAY INSTRUCTIONAL INTRODUCTION TO LIVING IN CHRISTIAN COMMUNITY. FORGIVENESS OF OTHERS, SELF EXAMINATION, GOAL SETTING, SELF ESTEEM, SMALL GROUP INTERACTION, COMMUNICATION, RESPONSIBILITY, TRUST AND RESPECT ARE INTENSE ELEMENTS OF THE CURRICULUM.

This certifies that JAMES ClARK attended and

completed Kairos # 12 at Federal Correctional Institution, Otisville, New York

during JUNE 10TH – 13TH, 2004

Jerry Stabile

Chairman, Kairos District of Mid Hudson N.Y.

This certificate should be a permanent part of the official records of the above named individual. It certifies participation in a significant program which entails extensive follow-up participation, and is hereby entitled to participate in Kairos activities when these are offered at other Department of Corrections institutions to which this individual may be assigned.

Sean A. Costello
Chaplain

Federal Correctional Institution, Otisville, New York
Institution

# Certificate of Achievement

**This certifies that**

JAMES CLARK

**has satisfactorily completed**

LEGAL RESEARCH & PROCEDURE

**Consisting of** 40 **Hours of Training**

**This certificate is hereby issued this** 6th **day of** JUNE **, 20**05